IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE FEMATT, ) | |
| ) | Case No. 11 CV 1530 |
| Plaintiff, ) | |
| ) | Judge Dow |
| v. ) | |
| ) | Magistrate Judge |
| CITY OF CHICAGO, et al., ) | Arlander Keys |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendants, Chicago Police Officers William Morales, Timothy Parker, and Paul Zogg move to disqualify attorney Torreya Hamilton, attorney Elizabeth Uribe, and all other attorneys associated with the Hamilton Law Office from representing the Plaintiff in this case, Mr. Jose Fematt. Defendant Officer Keith Herrera later joined that motion [70]. For the reasons set forth below, Defendants' motion to disqualify [66] is denied.

**BACKGROUND**

On November 24, 2004, Billy Glover filed a complaint in the United States District Court for the Northern District of Illinois in a case captioned *Billy Glover v. City of Chicago, et al.*, 04 c 7655, alleging that several City of Chicago police officers violated his civil rights under Section 1983 and various state law claims.

From 2003 to 2006, Attorney Torreya Hamilton worked for the City of Chicago's Corporation Counsel's Office in the Federal

Civil Rights Litigation Division as an Assistant Corporation Counsel. Ms. Hamilton represented numerous individual Chicago police officers in civil rights lawsuits during her time at the Corporation Counsel's office. Most important to the instant motion is Ms. Hamilton's assignment in February 2005 to represent the several Chicago police officers in the *Glover* case. The defendant police officers in the *Glover* case were all members of the now disbanded Special Operations Section of the Chicago Police Department, and two of the officers -Jerome Finnigan and Keith Herrera- are also named as defendants in the instant case.

Since 2007, Ms. Hamilton has maintained her own law practice as a plaintiffs' civil rights attorney. Plaintiff, Jose Fematt, retained Ms. Hamilton to represent him in the instant case. However, Defendants contend that Ms. Hamilton's previous assignment to the *Glover* case created an ongoing attorney-client relationship with each of the individually named officers therein. Defendants argue that Ms. Hamilton became privy to confidential information and participated in a discussion about the case with her co-counsel, warranting not only Ms. Hamilton's disqualification, but also the disqualification of attorney Elizabeth Uribe and all other attorneys associated with the Hamilton Law Office, from representing Mr. Fematt in this case. A hearing was held on this matter on April 16, 2012.

Ms. Hamilton contends that she routinely conducts a conflict check prior to undertaking any case against her former employer, and that because her mere prior assignment to the *Glover* case poses no conflict, Mr. Fematt should not be deprived of the counsel of his choosing. Ms. Hamilton asserts that Defendants have failed to meet their burden establishing a conflict, as not only did the *Glover case* settle before the defendants therein answered, but also that Defendants' reliance upon one brief conversation with her co-worker in 2005, as well as the mere possibility of her having access to unspecified documents that may, or may not, have ever existed, are both too tenuous of reasons to have her[1] disqualified. The Court agrees.

**DISCUSSION**

In its Motion to Disqualify Attorney Torreya Hamilton from representing Jose Fematt, Defendants argue that disqualification is warranted because: 1) pursuant to ABA Model Rule 1.9(a) which states, "[a] lawyer who has formerly represented a client shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." and 2) pursuant to *Analytica, Inc. V. NPD Research, Inc.*, 708

---

[1] The Court acknowledges that Defendants also move to disqualify Attorney Elizabeth Uribe and any other attorneys associated with the Hamilton Law Office, as well.

3

F.2d 1263, 1266 (7th Cir. 1983)., which, Defendants argue, is entirely consistent with Rule 1.9 and is mirrored by the third official comment to Rule 1.9 that explains, "[m]atters are 'substantially related'...if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *See* Comment 3 to Model Rule of Professional Conduct.

"Disqualification of an attorney is a drastic measure that should only be imposed when absolutely necessary." *Stopka v. Alliance of American Insurers*, No. 95 C 7487, 1996 WL 204324, at 2 (N.D.Ill. April 25, 1996). "A party is entitled to a degree of deference in the prerogative to proceed with counsel of its choice." *United States ex rel. Cericola v. Ben Franklin Bank*, No. 99 C 6311, 2003 WL 21476020, at 2 (N.D.Ill. June 23, 2003). Moreover, the "moving party bears the burden of establishing that disqualification is appropriate." *Ben Franklin Bank*, 2003 WL 21476020, at 2. The moving party must establish more than the mere possibility that a conflict arose; there must be an actual conflict. *Philips Medical Systems Int'l B.V. v. Bruetman*, 8 F.3d 600, 606 (7th Cir. 1993).

In this case, Defendants have failed to establish more than a mere possibility that a conflict could have arisen or that confidential factual information could have been obtained by Ms.

4

Hamilton, which she denies. Defendants have failed to specifically demonstrate to the Court how Ms. Hamilton's assignment to the *Glover* case warrants her disqualification. Defendants' main argument for disqualification rests upon the fact that Ms. Hamilton formerly was assigned to represent officers Jerome Finnigan and Keith Herrera during her time as an Assistant Corporation Counsel for the City of Chicago and that she, therefore, cannot represent Plaintiff, Jose Fematt, in this lawsuit because of her ongoing duty to her former clients. However, after reading the parties' briefs, as well as holding an evidentiary hearing on the matter, the Court is unpersuaded that Ms. Hamilton ever "represented" officers Keith Herrera and Jerome Finnigan, or knew of any confidential information. From the Court's perspective, Ms. Hamilton's involvement in the *Glover* case solely entailed the fact that she was assigned to it, and the Court does not find that to be a sufficient reason for her disqualification.

At the evidentiary hearing held on April 16, 2012, Defendants' witness, Mr. Josh Engquist, testified regarding his interaction with Ms. Hamilton. Currently Mr. Engquist is Senior Counsel with the Corporation Counsel's Office for the City of Chicago. However, Mr. Engquist testified that, at the time of the filing of the *Glover* matter in 2004, his position was that of Assistant Corporation Counsel for the City of Chicago. He

testified that, during that time and in that position, he did have occasion to work with Ms. Hamilton. (Evidentiary Hr'g Tr.8, Apr. 16, 2012.) Mr. Engquist testified that in 2004, he was initially assigned to case number 04 c 7655, involving Billy Glover, along with a Ms. Marcelle Lecompte. (Id.) He testified that, at some point after the initial assignment, Ms. Hamilton was then assigned as co-primary to the case, as well. By the time Ms. Hamilton was assigned to the case, however, it was essentially over. Ms. Hamilton was assigned on January 28, 2005. The settlement paperwork went out on February 17, 2005, 20 days later. On January 30, 2005, Ms. Hamilton inquired of Mr. Engquist, via email, about the status of the case and how she could help. By January 31, 2005, Mr. Engquist testified that he responded, via email, to Ms. Hamilton that he was looking for a settlement demand and for her not to worry about the case, but that if she wanted more information they could talk later. (Evidentiary Hr'g Tr.12, Apr. 16, 2012.)

In addition to this email exchange, Defendants rely upon an approximately two minute long conversation between Mr. Engquist and Ms. Hamilton, which occurred shortly after the emails, to argue for her disqualification. Mr. Engquist testified that, at some point after February 2nd but before February 17th, he spoke with Ms. Hamilton regarding the *Glover* case. He testified that it was after he already had authority to settle, but before the

settlement document went out. (Id. at 15.) Mr. Engquist testified that the conversation took place while Ms. Hamilton stood in the doorway of his office, and that during the encounter, he told Ms. Hamilton "[i]n essence, don't worry about it...because I was going to settle the case..Don't worry about it, I'm taking care of it, something like that." (Id.) Mr. Engquist testified that the reason he told Ms. Hamilton not to worry about the case was because, at that point, there was "no work for her to do," and that he was pretty confident the case was going to settle. (Id. at 39.) Mr. Engquist went on to tell Ms. Hamilton why he was settling the case and after the conversation concluded, Ms. Hamilton left. (Id. at 17.) Mr. Engquist testified that the entirety of the conversation was "only a couple minutes; Pretty short." (Evidentiary Hr'g Tr.20, Apr. 16, 2012.)

Defendants appear to contend that during this two-minute time frame that Ms. Hamilton conversed with Mr. Engquist in the doorway to his office about why he settled the *Glover* matter, Mr. Engquist revealed thoughts, impressions, and confidences to her that he *may* have derived from conversations that he *may* have had with one or more of the *Glover* defendants. However, Mr. Engquist can not recall exactly which officers he spoke with, if any, nor what was said. This attempt at an argument is far too speculative for the Court to grant disqualification.

The Court does not find either the emails nor the two-minute conversation detailed above to be sufficient grounds for disqualification of counsel, let alone a sufficient basis to even conclude that Ms. Hamilton ever "represented" officers Herrera or Finnigan. Mr. Engquist testified that *Glover* was a "fairly small case," that it settled before he even filed an answer, and that by the time Ms. Hamilton was assigned, "there was nothing for her to do." (Id. at 28 and 40.) Ms. Hamilton never filed an appearance in *Glover*; never met or conversed with any of the officers involved; never read or researched any information regarding the claims of the case; never went to court; and never drafted any pleadings. Essentially, Ms. Hamilton did nothing. However, she did inquire of Mr. Engquist as to the status of the case, only to be told that it was basically settled and that she could continue to do nothing. The Court does not find this to be "representation", much less grounds for disqualification. Morever, Mr. Enguist testified that he cannot recall whether he met with officer Herrera, and cannot offer the Court any specifics as to what he might have shared with Ms. Hamilton regarding his "thoughts and impressions" of the *Glover* case. Therefore, zero confidential information has been proven to have been obtained through either the emails or the conversation between Ms. Hamilton and Mr. Engquist.

Defendants lastly point to the fact that Ms. Hamilton (along

with everyone else in the Individual Defense Litigation group) had access to case files via the "IDL, the Individual Defense Litigation database," and that the files contained confidential information regarding the groups' cases. (Id. at 13.) Ms. Hamilton testified that she "never used [the IDL database] very often" (Id. at 61.), and did not access it during her time assigned to the *Glover* case. However, even if Ms. Hamilton did access the database, the Court does not find any of the information she could have obtained to be confidential or possibly pose a conflict. Mr. Engquist testified as to the kinds of documents the database would normally contain, stating generally, "things like who is assigned to the case, plaintiff attorneys that are in the case, clients that --plaintiffs in the case, the defendant in the case. It would have some information about the clients. It would have, like, phone numbers, contact information, unit of assignment, things of that nature." (Evidentiary Hr'g Tr.14, Apr. 16, 2012.) Mr. Engquist went on to state that the database would sometimes contain information about the plaintiff, "it might have -- I think we had, like, IR numbers, which are fingerprint numbers...It would have date of incident. It would have information about settlement, if it settled. It would have information about the judge..." (Id.)

All of the above categories of documents that Defendants suggest Ms. Hamilton could have accessed, fail to meet any

definition of confidential, nor are they things that could possibly impose a conflict. Moreover, Ms. Hamilton testified that she hardly ever used the IDL database generally, and did not access it regarding the *Glover* case at all. The mere possibility that she could have accessed the database during her time assigned to the *Glover* case is unavailing. It is uncontroverted that she did not do so. The Court finds Mr. Engquist's testimony too tenuous to warrant disqualification, and the mere fact that Ms. Hamilton could have had access to a file with basic information regarding *Glover* is inconclusive of her exposure to confidential or prejudicial information.

Defendants' reliance upon Rule 1.9 and *Analytica, Inc. V. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983.), is misplaced at best and misleading at worst. The Court finds no substantial risk that confidential factual information was obtained during Ms. Hamilton's assignment to the *Glover* case that would materially advance Mr. Fematt's position, and the facts of *Analytica* are readily distinguishable from the instant case. In *Analytica*, an entire law firm was representing a corporation and providing them advice on an antitrust suit. One of the principals in that company left, filed a complaint against his former employee with the FTC, and then hired the same firm, which had access to all the tax and financial information, to pursue the case at the FTC. Thus, in the middle of the negotiations,

the law firm switched sides. The Seventh Circuit explained that a law firm is not permitted to switch sides, representing one party on one day, and then the other party the next. (*Analytica*, 708 F.2d 1263.)

Defendants' attempt to compare the instant case to *Analytica* is incomprehensible, especially given the facts above, coupled with the additional distinction that the representation in *Analytica* occurred a few months after the prior representation of the original client. Conversely, Ms. Hamilton worked for the Law Department for three years, left in 2006, and filed a lawsuit on behalf of Jose Fematt on March 4th, 2011 - more than five years after her "representation" of officers Finnigan and Herrera.

Lastly, *Analytica* actually supports Ms. Hamilton's representation of Mr. Fematt, with the court therein explaining that there is an available exception when an associate of a government legal department changes jobs, and later her new firm is retained by an adversary of a client of her former firm. The Seventh Circuit maintains that, in such a case, "even if there is a substantial relationship between the two matters, the lawyer can avoid disqualification by showing effective measures were taken to prevent confidences from being received..." (*Id.*, at 1267.) In the instant case, Ms. Hamilton was not a recipient of any confidences regarding the defendant officers. Not only did she not once meet with any of the officers involved in *Glover*,

but she also never had any communication whatsoever with either officer Herrera or Finnigan.  Additionally, Ms. Hamilton did not review any documents in the file, therefore, she could not have learned anything from the file that would have been useful to her in this representation or prejudicial to the Defendants herein.

In light of all of the above, the Court denies Defendant's Motion to Disqualify Ms. Hamilton, and because Defendants do not allege any independent basis for the disqualification of Attorney Elizabeth Uribe, nor any other attorneys associated with the Hamilton Law Office, the Court accordingly also denies disqualification of the Hamilton Law Office as well as any of its associates.

## CONCLUSION

Disqualification is a drastic measure that the Court does not take lightly. Defendants have failed to meet their burden of establishing cause for Ms. Hamilton's disqualification, nor the disqualification of Attorney Elizabeth Uribe and any other attorneys associated with the Hamilton Law Office. Disqualifying Ms. Hamilton would deprive Mr. Fematt of the counsel of his choosing, and the Court finds no reason to do so. For the reasons set forth above, Defendants' motion to disqualify [66] is DENIED.

Date: May 9, 2012

E N T E R E D:

*[signature: Arlander Keys]*

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT