**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSE FEMATT, ) | |
| ) | |
| Plaintiff, ) | Case No.: 11-cv-1530 |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| JEROME FINNIGAN, ET AL., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion [106] to set aside Magistrate Keys' order [104], entered on May 9, 2012. For the reasons set forth below, the Court denies Defendants' motion [106] and upholds Judge Keys' order [104].

**I.     Background**

Plaintiff's counsel, Torreya Hamilton, worked for the City of Chicago for three of her seventeen years practicing law. See Transcript of Evidentiary Hearing ("Trans.") at 54-55. From 2003 to 2006, Hamilton worked for the Corporation Counsel's office representing individual police officers in civil rights cases. Trans. at 54-55. Since 2007, Hamilton has maintained her own law practice as a plaintiffs' civil rights attorney. *Id.* at 56. On March 4, 2011, Hamilton filed a lawsuit on behalf of Plaintiff Jose Fematt and against the City of Chicago and Defendant Officers Margaret Hopkins, Donovan Markiewicz, Jerome Finnigan, Keith Herrera, Timothy Parker, William Morales, and Paul Zogg. On November 2, 2011, Defendants Parker, Morales, and Zogg filed a motion to disqualify Plaintiff's counsel, which Defendant Herrera later joined. The City of Chicago and Defendants Hopkins, Finnigan, and Markiewicz did not join in the motion.

Corporation counsel attorneys maintained that Plaintiff's counsel should be disqualified because she previously represented Defendant Officers Finnigan and Herrera while she was employed at the Corporation Counsel's office in a case entitled *Glover v. City of Chicago*, 04 CV 7655. Hamilton has maintained that she never represented any of the Defendant Officers in the *Glover* case. On April 16, 2012, Judge Keys held an evidentiary hearing on the Corporation Counsel's motion to disqualify Hamilton. Based on the evidence adduced at the hearing, it is undisputed that Hamilton did not file an appearance, author any documents, appear in court, or outwardly participate in the *Glover* litigation in any manner. Trans. at 39-40. It also is undisputed that Hamilton did not have contact with any of the Defendants in *Glover*. *Id.* at 40, 44. The only evidence that Defendants presented in support of disqualification is a conversation that allegedly occurred in 2005 as Hamilton was standing in the doorway of a co-worker's office. *Id.* at pp. 17-20. The co-worker does not recall the specifics of the conversation or if he ever spoke to Defendants Finnigan or Herrera prior to his conversation with Hamilton. *Id.* at 17-19, 32. After hearing evidence and judging the credibility of the witnesses, Judge Keys denied the Corporation Counsel's motion on May 9, 2012. *Dkt*. 104. Defendants Zogg, Parker and Morales now ask the Court to set aside Judge Keys' ruling.

**II.     Standard of Review**

Because Judge Keys ruling that Plaintiff's counsel should not be disqualified is not case dispositive, Fed. R. Civ. P. 72(a) provides the appropriate standard of review. See, *e.g.*, *Royal Maccabees Life Ins. Co. v. Malachinski*, 2001 WL 290308, at *10 (N.D. Ill. Mar. 20, 2001). Under this standard, a magistrate judge's ruling will be set aside only if it is "clearly erroneous or contrary to law." *Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006); see also *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997) (holding that

under the clear error standard of review, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made").

**III.     Analysis**

In considering motions to disqualify, courts must balance two important considerations: "the sacrosanct privacy of the attorney-client relationship (and the professional integrity implicated by that relationship) and the prerogative of a party to proceed with counsel of its choice." *Schiessle v. Stephens*, 717 F.2d 417, 419-20 (7th Cir. 1983). The Seventh Circuit has "continuously maintained" that, in achieving that balance, it is important to bear in mind that "disqualification is a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Id.* (citation omitted); see also *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir. 1982) (emphasizing that motions for disqualification "should be viewed with extreme caution for they can be misused as techniques of harassment"). "Accordingly, the burden is on the moving party to show the facts warranting disqualification." *Van Jackson v. Check 'N Go of Illinois, Inc.*, 114 F. Supp. 2d 731, 732 (N.D. Ill. 2000). There must be solid evidence to support an allegation of conflict. "The possible appearance of impropriety * * * is simply too weak and too slender a reed on which to rest a disqualification order * * * particularly where the mere appearance of impropriety is far from clear." *Freeman*, 689 F.2d at 723.

The question before Judge Keys was whether Hamilton ever formed an attorney-client relationship with Defendant Officers Finnigan and Herrera. Defendants say that a relationship with formed, and therefore argue that Judge Keys should have conducted an analysis pursuant to ABA Model Rule of Professional Conduct 1.9, entitled "Duties to Former Clients"; Plaintiff

3

maintains that there was no prior relationship, and therefore a conflict does not exist under Rule 1.9. Rule 1.9 applies to a lawyer's duty to her former clients and is not triggered unless an attorney-client relationship was previously been established. See *Hughes v. Paine, Webber, Jackson & Curtis Inc.*, 565 F. Supp. 663, 667 (N.D. Ill. 1983) ("Before an attorney becomes subject to the obligations of the Code [of Professional Responsibility], an attorney-client relationship must be found to exist."). Magistrate Keys' analysis primarily focused on the initial inquiry—whether a relationship existed—because if no attorney-client relationship existed, then the analysis ends there. Defendants urge this Court to set Judge Keys' ruling aside because according to them, he did not engage in the proper analysis. Plaintiff argues that the analysis urged by Defendants presupposes a prior attorney-client relationship, which Judge Keys found did not exist on these facts.

"An attorney-client relationship exists when the lay party submits confidential information to the law party with reasonable belief that the latter is acting as the former's attorney." *International Paper Co. v. Lloyd Mfg. Co.*, 555 F. Supp. 125, 132 (N.D. Ill. 1982) (citing *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1321 (7th Cir. 1978)). An express contractual attorney-client relationship need not have formed, but the individual must have consulted the lawyer with the intention of seeking legal advice. *Id.* at 667-68. Defendants argue that an e-mail assigning the *Glover* case to Hamilton created the attorney-client relationship in this case and that it was further developed during a two-minute conversation between Hamilton and assistant corporation counsel Engquist, in which Engquist notified Hamilton that the case was settling.

After presiding over an evidentiary hearing, Magistrate Keys concluded that no attorney-client relationship ever existed between Hamilton and Defendant Officers Finnigan and Herrera:

4

"[A]fter reading the parties' briefs, as well as holding an evidentiary hearing on the matter, the Court is unpersuaded that Ms. Hamilton ever 'represented' officers Keith Herrera and Jerome Finnigan." [104 at 5]. Because Magistrate Keys found that Hamilton never represented Defendant Officers, he did not proceed with the "substantially related" analysis used to decide whether an attorney's prior representation of a client justifies disqualification.

The Court finds no error in Judge Keys' application of the facts presented at the evidentiary hearing to the legal standard defining when an attorney-client relationship will be found to exist. Hamilton has consistently maintained that an attorney-client relationship between her and Defendant Officers was never formed. She did not file an appearance in *Glover*, author any documents, or appear in Court. Furthermore, she did not have any contact with Defendant Officers in *Glover*. Judge Keys was not persuaded to disqualify on the basis of evidence of a two-minute conversation between Hamilton and Engquist (the specifics of which could not be recalled), nor is this Court.[1] At best, what can be gleaned from this evidence is that Engquist told Hamilton that the case was settling.[2] In addition, Engquist acknowledged that Hamilton likely never even had the case file. Defendants' insistence that an attorney-client relationship existed on the basis of this conversation and the 2005 e-mail chain "is simply too weak and too slender a reed on which to rest a disqualification order * * *." *Freeman*, 689 F.2d at 723.

---

[1] The two main cases Defendants rely upon in arguing for the use of the three-step test are easily distinguished from the present dispute. Neither of the two main cases relied upon by Defendants involves any uncertainty about whether there was a prior attorney-client relationship. See, e.g., *Scala's Original Beef & Sausage Co., LLC v. Alvarez*, 2009 WL 4823916 at *2-4 (N.D. Ill. 2009) (no question that the lawyer and his firm had formed an attorney-client relationship with the defendants; rather, the issue was whether the prior litigation was so "substantially related" to the present case to justify disqualification); *Wade v. City of Chicago*, 2010 WL 550988 at *1 (N.D. Ill. 2010) (same). In both of these cases, the attorneys filed appearances and participated in the litigation, neither of which Hamilton did.

[2] Mr. Engquist testified that he did not meet with all of *Glover* officers, he could not remember which ones he actually met with, and he did not take any notes about what they might have said at this meeting. Trans. at 33-34.

5

In any event, even if Hamilton had previously represented Defendant Officers and thus the standard urged by Defendants would apply, Defendants have failed to demonstrate that Magistrate Keys' order denying the motion to disqualify was clearly erroneous or contrary to law. An attorney who undertakes litigation against a former client will be disqualified if a "substantial relationship" exists between the subject matter of the prior representation and the present representation. *LaSalle National Bank v. County of Lake,* 703 F.2d 252, 255 (7th Cir. 1983). In determining whether such a relationship exists, courts in this Circuit employ the following three-step analysis: (1) the trial judge must make a factual reconstruction of the scope of the prior legal representation; (2) it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters; and (3) it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client. *Id.* Generally, matters are "substantially related" where "the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266 (7th Cir. 1983). A finding that a "substantial relationship" exists gives rise to a rebuttable presumption that the attorney received confidential information during his prior representation. *LaSalle,* 703 F.2d at 256. The Court then must go on to ask whether the presumption of receipt of confidential information has been adequately rebutted. *Id.* "A very strict standard of proof must be applied to the rebuttal of this presumption * * * and any doubts as to the existence of an asserted conflict must be resolved in favor of disqualification." *Id.* at 257.

On the first part of the analysis, Magistrate Keys outlined the scope of Hamilton's alleged prior "representation." In his order, Magistrate Keys specifically found: "Ms. Hamilton never

6

filed an appearance in *Glover*; never met or conversed with any of the officers involved; never read or researched any information regarding the claims of the case; never went to court; and never drafted any pleadings. Essentially, Hamilton did nothing. However, she did inquire of Mr. Engquist as to the status of the case, only to be told that it was basically settled and that she could continue to do nothing." [104 at 8.] Magistrate Keys went on to state that "[t]he Court does not find this to be 'represenation,' must less grounds for disqualification." *Id.* Magistrate Keys found that the scope of Hamilton's alleged participation in the *Glover* case was so minimal as to be nonexistent, and this Court concurs. The "scope of representation" prong of this three-part analysis weighs heavily against disqualification.

Defendants also argue that Magistrate Keys should have "determine[d] whether it [was] reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters." *Scala's Original Beef & Sausage Co., LLC*, 2009 WL 4823916 at * 2. Having found that no attorney-client relationship existed, it would not have been logical for Judge Keys to then engage in the analysis that Defendants suggest. Nevertheless, Judge Keys did find that there was insufficient evidence that confidential information was shared with Hamilton. The only evidence presented at the evidentiary hearing to support Defendants' contentions to the contrary was Engquist's assertion that he shared his own "thoughts and impressions" with Attorney Hamilton regarding why he settled the *Glover* case. Judge Keys was not willing, nor is this Court, to make a leap from that sparse, vague evidence to a finding that there was a sharing of client confidences. As it is undisputed that Hamilton never had any contact with Finnigan or Herrera, nor did any work on the *Glover* case, it is too much of a stretch to presume that she was privy to client confidences in *Glover*.

7

Finally, Defendants assert that Judge Keys erred in finding that any information that Hamilton may have obtained in 2005 would be irrelevant to the instant matter. Judge Keys determined that there was insufficient evidence that Hamilton learned anything from the *Glover* case, let alone that she learned something relevant which she could use in the present case to the detriment of a former client. Even if the *Glover* plaintiff's allegations and Plaintiff Fematt's allegations are similar, there simply was no evidence that she was privy to any of Finnigan or Herrera's client confidences, either directly from the client or from her discussions with Engquist. Nothing that the Defendants presented at the evidentiary hearing could sustain a "definite and firm conviction" that Plaintiff Fematt should be deprived of his choice of counsel based on a real conflict of interest.

The Seventh Circuit has taken the position that "if an attorney can clearly and effectively show that he had no knowledge of the confidences and secrets of the client, disqualification is unnecessary and a court order of such might reasonably be regarded as an abuse of discretion." *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 723 (7th Cir. 1982). In the present instance, the sum total of Hamilton's involvement in the *Glover* case was to send two e-mails to Engquist to inquire if he needed any assistance with the case (to which he replied no) and a two-minute conversation with Engquist while she stood in the doorway to his office, about which Engquist testified that he was not sure what he said or what prompted him to tell Hamilton his "thoughts and impressions." Trans. at pp. 44-45. Further, Hamilton testified she does not even recall this conversation. *Id*. at 61. In summary, there was insufficient evidence for Judge Keys to have presumed that client confidences were shared with Hamilton in this case, where it was undisputed that Attorney Hamilton did not have contact with the alleged former clients. But even if a presumption was assumed, it was sufficiently rebutted at the evidentiary hearing. In

8

light of all of the evidence (and lack of evidence), Magistrate Keys' determination that "Ms. Hamilton was not a recipient of any confidences regarding the defendant officers" was not clearly erroneous and his corresponding conclusion that the motion to disqualify should be denied was a legally correct application of the law to that factual determination.

**IV.     Conclusion**

For these reasons, the Court denies Defendants' motion to set aside [106] and affirms Magistrate Judge Keys' May 9, 2012 order [104].

Dated: August 13, 2012

_____

Robert M. Dow, Jr.

United States District Judge

9